[Cite as *State v. Harrington*, 2013-Ohio-1864.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Sheila G. Farmer, J, |
| -vs- | : | | |
| | : | | |
| TIMOTHY R. HARRINGTON | : | | Case No. 12-CA-31 |
| | : | | |
| Defendant-Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Court of Common
                               Pleas, Case No. 11-CR-152

JUDGMENT:                      Affirmed

DATE OF JUDGMENT:              May 6, 2013

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOCELYN S. KELLY                        THOMAS R. ELWING
239 W. Main Street                      60 West Columbus Street
Suite 101                               Pickerington, OH  43147
Lancaster, OH  43130

*Farmer, J.*

{¶1} On April 8, 2011, the Fairfield County Grand Jury indicted appellant, Timothy Harrington, on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, fifteen counts of burglary in violation of R.C. 2911.12, one count of attempted burglary in violation of R.C. 2911.12 and 2923.02, six counts of breaking and entering in violation of R.C. 2911.13, four counts of vandalism in violation of R.C. 2909.05, one count of grand theft in violation of R.C. 2913.02, and one count of receiving stolen property in violation of R.C. 2913.51. All charges stemmed from various thefts of copper pipe and wire from area vacant homes.

{¶2} On August 4, 2011, appellant filed a motion to suppress all evidence, claiming an unlawful and warrantless trespass upon his property by a police officer who installed a GPS tracking device on his vehicle. The GPS unit was authorized to be placed on appellant's vehicle via an entry signed by a Franklin County municipal court judge. A hearing on the suppression motion was held on September 2, 2011. By journal entry filed February 22, 2012, the trial court denied the motion.

{¶3} On May 2, 2012, appellant pled no contest to all but the grand theft count and the receiving stolen property count which were dismissed. By judgment entry filed May 23, 2012, the trial court sentenced appellant to an aggregate sentence of fifteen years in prison, three years suspended in lieu of five years of community control.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶5}   "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE RESULTING FROM POLICE INSTALLATION OF A GPS TRACKING DEVICE ON APPELLANT'S AUTOMOBILE WITHOUT A VALID SEARCH WARRANT IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION."

I

{¶6}   Appellant claims the trial court erred in denying his motion to suppress. We disagree.

{¶7}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.  First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence.  *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 485 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993).  Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact.  In that case, an appellate court can reverse the trial court for committing an error of law.  *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993).  Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference

to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶8} Appellant argues the warrantless trespass upon his driveway and the installation of a GPS device on his vehicle violated his rights under the Fourth Amendment. By entry filed February 2, 2011, a Franklin County municipal court judge granted police the right to place a GPS tracking device on appellant's vehicle. Our first determination is whether this entry was a violation of appellant's Fourth Amendment rights. For the following reasons, we find granting the request was not a violation of appellant's protections against unlawful and warrantless seizures.

{¶9} On February 2, 2011, Reynoldsburg Police Detective Michael Binder appeared before the municipal court judge and set forth via affidavit his reasons, observations, and the facts leading to the request for the installation of the electronic tracking device. The judge granted the installation of the device on the specific vehicle allegedly being used to transport the suspect and the stolen copper to and from the crime scenes:

1. Those member's of the Reynoldsburg Police Department are authorized to install and operate an electronic tracking device on subject vehicle at 1996 Pontiac Sunfire, red in color, Ohio License EWP6062, VIN # 1G2JB1247T7576575 during the daytime or nighttime. The electronic

tracking device may be operated and monitored continuously throughout the period of this court order and may be monitored when the subject vehicle is located in a place where there is a reasonable expectation of privacy.

2. That members of the Reynoldsburg Police Department may surreptitiously enter the above described subject vehicle for the explicit purpose of installing and removing said electronic tracking device, and to reenter the subject vehicle at any time to make mechanical adjustments should the device be rendered inoperable.

{¶10} Appellant argues regardless of a review of sworn-to facts by a neutral magistrate and the entry, the placing of the GPS device was a warrantless trespass. In support of his position, appellant cites the case of *United States v. Jones,* ___ U.S. ___, 132 S.Ct. 945 (2012). Although *Jones* does state that the warrantless placing of a GPS tracking device upon a vehicle is against the Fourth Amendment guarantees of unreasonable searches and seizures, it does not address an authorized placing of a GPS device by the state. In addressing the issue of a non-trespass, the majority revisited its decision in *Katz v. United States,* 389 U.S. 347 (1967). In *Katz,* the United States Supreme Court found the placement of an unwarranted eavesdropping device in a public telephone booth was not a search envisioned by the Fourth Amendment. Although *Katz* may be particularly relevant to the inquiry as to the location of the vehicle when the GPS device was placed, it does not answer the question if a neutral magistrate may grant the placement of the device. In particular, the *Jones* court leads

one to the impression that the specific issue is for another day. The day may have just arrived.

{¶11} The Fourth Amendment takes its historic roots from the use by the colonial government of general search warrants (Writs of Assistance). As a result, our Constitutional framers determined that a violation of privacy is only reasonable by a warrant "supported by probable cause and specifically describing the place to be searched and the thing to be seized." Katz, *Ohio Arrest, Search and Seizure,* Section 1:4, at 13 (2009 Ed.)

In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that

probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*State v. George,* 45 Ohio St.3d 325 (1989), paragraphs one and two of the syllabus, following *Illinois v. Gates,* 462 U.S. 213 (1983).

{¶12} Do the facts presented in this case meet the minimum requirements of probable cause and specific description? We answer in the affirmative. The municipal court judge reviewed an affidavit that set forth specific facts and observations that clearly met the probable cause standard. Further, the issuing entry specifically identified the vehicle upon which the device was to be placed including possible locations.

{¶13} Although much is made about the lack of service of the execution of the warrant, we find that is a distinction without a difference. The issue is whether the search was authorized under the scrutiny of probable cause. We note the order is very similar to entries for other eavesdropping devices. As noted in *Jones,* the GPS device is merely shortcutting the actual personal surveillance of the subject vehicle as it traverses the public roads.

{¶14} We conclude the test of *Katz v. United States, supra,* and its progeny have been met as to the entry authorizing the warrant.

{¶15} The second inquiry is whether the police, in fulfilling the directives of the entry, had the right to enter upon appellant's private property to place the device in his vehicle. The specific issue is whether appellant's expectation of privacy extends to the vehicle parked in his own driveway.

{¶16} One Federal Circuit Court and one California Appellate Court pre-*Jones* have discussed whether the placing of a tracking device in the undercarriage of a vehicle while parked in a driveway is in fact the "curtilage" of the property and included in an owner's expectation of privacy. See, *United States v. McIver,* 186 F.3d 1119 (9th Cir.1999) and *The People v. Daniel George Zichwic,* 94 Cal.App.4th 944 (2001). Both cases recognize it is the placement of the parked vehicle in relation to the residence that determines if it is in the curtilage. The *Zichwic* court held at 953 that just like any other visitor to a residential property, a police officer is entitled to walk on to parts of the curtilage that are not fenced off:

Defendant contends that the police searched his property when "they trespassed into the curtilage of his home." The concept of curtilage has been employed to identify what property is protected by the Fourth Amendment. In *Oliver v. United States* (1984) 466 U.S. 170 [104 S.Ct. 1735, 80 L.Ed.2d 214], the United States Supreme Court "recognized that the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." (*United States v. Dunn* (1987) 480 U.S. 294, 300 [107 S.Ct. 1134, 1139, 94 L.Ed.2d 326].) *Dunn* articulated several

factors relevant to determining whether a location is within the curtilage, including "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." (*Id.* at p. 301 [107 S.Ct. at p. 1139.].)

However, the law is clear that not every technical trespass onto the curtilage amounts to a search. Just like any other visitor to a residence, a police officer is entitled to walk onto parts of the curtilage that are not fenced off. "Whether a driveway is protected from entry by police officers depends on the circumstances. The fact that a driveway is within the curtilage of a house is not determinative if its accessibility and visibility from a public highway rule out any reasonable expectation of privacy. (*United States v. Magana* (9th Cir. 1975) 512 F.2d 1169, 1171.)" (*United States v. Smith* (6th Cir. 1986) 783 F.2d 648, 651.)

{¶17} Under the facts, the *Zichwic* court found at 956 that the normal route for a visitor to reach the defendant's front door would be to walk up the driveway from the street and by necessity navigate around any parked vehicles; therefore, the "trespass" was not a violation of the defendant's right of privacy.

{¶18} In *McIver,* the court found a truck parked outside the garage was not within the curtilage of the residence. The court at 1126 relied on the specific facts that

the driveway and the apron in front of the garage were open to observation from passing persons and there was no fence or gate present.

{¶19} Ohio courts have also recognized that some properties, although within the curtilage, are not provided Constitutional protection. See, *State v. Crenshaw,* 8th Dist. No. 90635, 2008-Ohio-4859 (an officer could walk up a driveway, but could not enter a fenced backyard); *State v. Buzzard,* 112 Ohio St.3d 451, 2007-Ohio-373 (an officer could look in a crack of a garage door); *State v. Terlesky,* 7th Dist. No. 05 MA 237, 2007-Ohio-3402 (an officer could look in a window of a closed business).

{¶20} Reynoldsburg Police Detective Tye Downard personally installed the device on appellant's vehicle during the early morning hours. T. at 34. The vehicle was parked in the driveway "facing in where the driver's seat is closer to the house and the rear bumper was down where the sidewalk area is." T. at 35. The vehicle was not enclosed by a fence or a gate and no signs or warnings or "no trespassing" signs were posted. *Id.* Detective Downard testified in order to install the device, he got down on the ground, slid under the vehicle, and attached it to the metal frame. T. at 43. He testified the normal course to approach the front door of the property would include passing the vehicle in the driveway. T. at 50.

{¶21} Based upon the specific facts of this case, we find no constitutional infringement by the officer who merely approached and passed the vehicle as any other visitor would. We find the trial court did not err in upholding the placement of the GPS device pursuant to the entry and order of the municipal court judge.

{¶22} Under the "fruit of the poisonous tree" doctrine, appellant argues the state's statements and the search warrant obtained for his residence were based upon

information procured via the GPS device.  Appellant argues this tainted evidence used for the search warrant requires suppression.  Based upon our finding that there was no Constitutional violation in placing the GPS device, we find this argument to be moot.

{¶23}  The sole assignment of error is denied.

{¶24}  The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Hoffman, J. concur.


s / Sheila G. Farmer_____


 s/ W. Scott Gwin_____


s/ William B. Hoffman_____

JUDGES

SGF/sg 23

[Cite as *State v. Harrington*, 2013-Ohio-1864.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TIMOTHY R. HARRINGTON | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12-CA-31 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed.  Costs to appellant.



s / Sheila G. Farmer_____


 s/ W. Scott Gwin_____


s/ William B. Hoffman_____

JUDGES